# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

JOSEPH C. PICKELL,

               Plaintiff,           CIVIL ACTION NO. 13-cv-12814

        v.                  DISTRICT JUDGE BERNARD A. FRIEDMAN

COMMISSIONER OF          MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

               Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Joseph C. Pickell seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his physical and mental impairments under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 12) and Defendant's Motion for Summary Judgment (docket no. 19). Plaintiff also filed a Supplemental Brief and a Response to Defendant's Motion. (Docket nos. 17 and 20.) The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). (Docket no. 3.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

## I.    RECOMMENDATION

The undersigned recommends that Plaintiff's Motion for Summary Judgment (docket no. 12) be GRANTED IN PART and DENIED IN PART and that Defendant's Motion for Summary Judgment (docket no. 19) be DENIED. The undersigned also recommends that this matter be

remanded for further consideration and explanation of Plaintiff's residual functional capacity to perform medium work and lift no more than ten pounds with his upper left extremity.

## II.     PROCEDURAL HISTORY

Plaintiff filed an application for supplemental security income with a protective filing date of October 1, 2010, alleging disability beginning November 1, 1986, due to personality disorder and physical ailments. (*See* TR 12, 183.) The Social Security Administration denied Plaintiff's claims on March 25, 2011, and Plaintiff requested a *de novo* hearing. (TR 12.) On February 8, 2012, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Michael S. Condon. (TR 12, 22.) In a February 22, 2012 decision, the ALJ found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy. (TR 12-22.) The Appeals Council declined to review the ALJ's decision (TR 1-7), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court.

## III.    HEARING TESTIMONY AND MEDICAL EVIDENCE

### A.     Plaintiff's Testimony

Plaintiff was 57 years old at the time of the administrative hearing and 55 years old on the date the application was filed. (TR 20.) Plaintiff testified that he was currently living in an apartment and had been working approximately 20 hours per week as a fundraiser/telemarketer for about eight months. (TR 31-32.) Plaintiff stated that he had been working 25 hours per week but that his boss cut his hours because he wasn't meeting his quota and threatened to let him go if his numbers didn't improve. (TR 44, 70.) Plaintiff testified that he enjoyed his job but that he sometimes had trouble doing it due to pains in his right hip and what he believed was Restless Leg Syndrome. (TR 32-33.) He added that he would occasionally lose his focus at work as a result of

2

the stress and anxiety of dealing with people's rudeness and profanity. (TR 33.) Plaintiff asserted that he probably wouldn't be able to perform his job on a full-time basis because he wouldn't be able to mentally sit there and listen to people like that for eight hours. (TR 33.) He added that he hard time dealing with it for four hours. (TR 33.) Plaintiff also stated that sometimes at work his right hand would start throbbing with pain and go into spasms, which was a residual injury from a previous bicycle wreck. (TR 34.) Plaintiff testified that he currently had his driver's license and that he also rode his bicycle. (TR 35.)

Next, Plaintiff and the ALJ discussed Plaintiff's history of incarceration and drug abuse. (TR 36-40.) Plaintiff confirmed that he had several convictions, mostly for larceny, but also for criminal sexual conduct. (TR 38.) Plaintiff testified that he had applied to about 200 jobs since getting out of prison in September of 2010. (TR 40-41.) He alleged that employers who sounded like they would give him a chance wouldn't hire him because of his background. (TR 41.) Plaintiff testified that he was scared that he wouldn't be able to get a job or find a place to live to stay out of prison. (TR 41.) Plaintiff then described his difficulty finding a permanent place to live due to his status as a sex offender. (TR 42-43.) He admitted that he finally received assistance in securing his telemarketer job through the "Opportunity Center." (TR 43.)

Plaintiff testified that he injured his left arm and shoulder by lifting weights in prison. (TR 44.) He elaborated that he could hardly move his arm for four to six months after the injury and couldn't return to weight lifting after that. (TR 44-45.) He stated that it hurts in the front shoulder area while he sleeps and while he sits idle; he said that it feels like something is twisting the muscle. (TR 45, 48.) Plaintiff testified that he hadn't had surgery for his shoulder injury and added that his doctor was still trying to figure out what was wrong with it. (TR 45.) He confirmed that the x-rays of his shoulder taken in late 2010 or early 2011 were negative and implied that he hadn't had any

3

x-rays taken since then because he had been without health insurance and just got it back at the time of the hearing.  (TR 45-47.)  He added that when he doesn't have health insurance, he has to suffer through the pain because he can't afford to go to the doctor.  (TR 47.)  Plaintiff then demonstrated his shoulder's range of motion and verbally stated that it hurt when he moved it to wash his hair, so much so that he sometimes had to use only his right hand.  (TR 48-49.)   Plaintiff admitted to washing showers and shoveling snow when he lived at a mission, but testified that it was painful and difficult to do so and that he only did it because the people at the mission were helping him out.  (TR 49-50.)

Plaintiff also testified to having gastroesophageal reflux disease (GERD), which was controlled with brand-name medication.  (TR 51.)  He further testified that the generic medication that he was currently taking didn't work as well, adding that it caused problems for him at work because he would have to cough and clear his throat a lot while talking on the telephone.  (TR 52.)  Next, Plaintiff described his limitations resulting from Chronic Obstructive Pulmonary Disease (COPD).  (TR 52-53.)  He testified that he had difficulty breathing at times, and that his symptoms had worsened, probably because he couldn't afford an inhaler without health insurance.  (TR 53.)  Plaintiff also alleged that he had knee problems, mostly when he went up and down stairs and if he carried anything over five to ten pounds.  (TR 53-54.)  He further alleged right hip pain when climbing stairs, putting on his socks and shoes, and after walking three blocks.  (TR 54, 55.)  He speculated that his pain stemmed from his muscles or tendons because his doctors were unable to find any bone problems.  (TR 55.)  Plaintiff testified that he wasn't taking any medications for his right hip because he was waiting for his health insurance prescription card.  (TR 56.)

Plaintiff then testified about his lower back pain.  (TR 56-57.)  He described it as sometimes just in the middle of his lower back and sometimes as stemming from his right hip across his lower

4

back.  (TR 57.)  He alleged that he had lower back pain when he carried things and when he bent over.  (TR 57.)  He elaborated that he probably couldn't carry much more than 20 pounds and that he had difficulty carrying his toolbox, which weighed 12 to 14 pounds.  (TR 57.)  He claimed that he had to choose the arm that was hurting the least just to pick it up.  (TR 57.)  Plaintiff did admit that he could lift and carry a gallon of milk, but not with his right hand.  (TR 72-73.)  He stated that he would use both hands when lifting and carrying something heavy.  (TR 73.)  He asserted that his right arm and hand weren't as strong as they used to be, that he couldn't make tight grips on anything with his right hand anymore, including drinking glasses and hammers, and that he also had trouble shaking hands with people (TR 57-59.)  Plaintiff testified that his problems with his right arm and hand, particularly with his right index finger, started after a bike accident in December of 2011.  (TR 58.)  He added that the x-rays didn't reveal any broken bones, but the emergency room doctor suggested that he see a specialist.  (TR 58.)  Plaintiff stated that he didn't follow up with a specialist because he couldn't afford it.  (TR 78.)

With regard to his mental impairments of major depressive disorder and personality disorder, Plaintiff testified that his violent tendencies had improved with age but that he still got irritated with people at times, to the point where he needed to remove himself from the situation.  (TR 63.)  He added that he didn't have much trouble dealing with people outside of work because he tended to surround himself with positive people and avoid others.  (TR 63-64.)  Plaintiff then testified that his depression would come and go.  (TR 64.)  He elaborated that he has trouble with depression about three to four times per month for one to two days at a time, usually when he got anxious or fearful of losing his home or job.  (TR 64-65, 68.)  Plaintiff affirmed that his depression affected his work performance.  (TR 69.)  Plaintiff testified that he dealt with his depression by withdrawing into himself or praying.  (TR 65.)  Plaintiff told the ALJ that he started taking medication for depression

5

a week before the hearing and that he couldn't judge how it was working out for him just yet. (TR 65-66.) He stated that he had taken a different depression medication in the past, which helped somewhat, but that he didn't always remember to take it. (TR 66-67.)

Plaintiff testified that the amount of time that he could sit or stand without discomfort varied but that it was usually about an hour; he also testified that he could walk a few blocks before experiencing discomfort. (TR 60-62.) Plaintiff also noted problems with fatigue and dozing off on the job. (TR 70-71.) He added that he would get heavy-eyed while watching television and that he would sometimes nap for an hour or two in the afternoon after he got off of work, typically three days per week. (TR 71-72.) Plaintiff added that his woodworking projects took longer due to his right hand and arm pain; he stated that he would still like to do them as a hobby but at limited times and a limited pace due to all of his ailments. (TR 59-60.) Plaintiff testified that he had to pace himself when doing household chores because he got short of breath and started hurting. (TR 74-75.)

### B.    Vocational Expert's Testimony

First, the Vocational Expert (VE) confirmed that her testimony would be consistent with the Dictionary of Occupational Titles (DOT). (TR 80.) Next, the VE attested that she was familiar with the jobs existing in the regional and national economies and that the region was the State of Michigan. (TR 80-81.) The VE also attested that she was familiar with Plaintiff's vocational background from her review of the record and from listening to his hearing testimony. (TR 81.) Then, after some discussion among the ALJ, the VE, and Plaintiff regarding his past relevant work, the VE classified Plaintiff's past work as a cleaner as unskilled at the medium exertional level. (TR 81-84.)

Next, the ALJ asked the VE whether a hypothetical person of the same age, education, and

6

work experience as Plaintiff who could work at any exertional level; occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; have no concentrated exposure to fumes, odors, dusts, gases, poorly ventilated areas, or temperature or humidity extremes; do no more than frequent over-the-shoulder reaching or lifting with the left arm; who is limited to doing only simple, routine, and repetitive tasks that do not involve fast-paced or production rate quotas; and who could have no contact with children, could perform Plaintiff's past work as a cleaner. (TR 85, 87.) The VE testified that such an individual would not be able to perform Plaintiff's past work, but he could perform unskilled work at the medium exertional level such as a machine feeder, for which there were approximately 15,500 positions available in the State of Michigan, and a packager, for which there were 7,200 positions in the region. (TR 85.) The VE further testified that the hypothetical individual would also be able to perform unskilled positions at the light exertional level, such as a machine tender, for which there were approximately 7,800 positions in the State of Michigan, and a line attendant, for which there were about 4,800 available positions in Michigan. (TR 86.)

The ALJ then asked the VE whether a second hypothetical person could perform Plaintiff's past work or any other jobs, assuming all of the conditions of the first hypothetical, but limiting the work to the medium exertional level, meaning that the individual could lift and/or carry up to 25 pounds frequently and 50 pounds occasionally, where the individual would also be limited to occasional contact with the general public, coworkers, and supervisors and would require the option to alternate between sitting and standing every hour throughout the workday. (TR 86, 87.) The VE responded that such an individual could not perform Plaintiff's past work, but would still be able to perform the machine tender and line attendant positions as well as the position of an unskilled packager at the light exertional level, for which there were approximately 4,200 jobs available in

7

the region.  (TR 87-88.)

    For the third hypothetical question, the ALJ asked the VE whether Plaintiff's past work or any other jobs would be available to that same hypothetical individual where the person could do no lifting in excess of ten pounds with the left arm.  (TR 88.)  The VE testified that such an individual would not be able to perform Plaintiff's past work but that he could perform the same jobs described in her response to the second hypothetical question.  (TR 88.)  Lastly, the ALJ asked the VE whether the individual from the third hypothetical question could perform Plaintiff's past work or any other positions where that person would be off task for at least ten percent of every workday. (TR 88-89.)  The VE responded that such an individual would not be able to perform Plaintiff's past work.  (TR 89.)  The VE added that an off-task level of ten percent is close to the maximum that would be tolerated by an employer, and if that person stayed under the 10 percent off-task level, he could perform the machine tender, line attendant, and light packager positions but that those positions would not be available if he were to exceed the ten percent off-task level.  (TR 89.)

    Next, Plaintiff's counsel asked the VE whether the availability of the jobs would be affected if the third hypothetical person were limited to occasional use of the left arm with a ten-pound weight restriction.  (TR 90.)  The VE responded that the light packager jobs would be eliminated, but the machine tender and line attendant jobs would still be available.  (TR 90.)  Plaintiff's counsel also asked the VE if work would be precluded where the hypothetical person would need to lie down three times in a five-day work week for one hour at a time.  (TR 90.)  The VE answered affirmatively.  (TR 90.)  Subsequently, the ALJ followed up on Plaintiff's counsel's question and asked the VE whether there would be any other jobs, besides the machine tender and line attendant positions, for the third hypothetical individual who was limited to occasional use of the left arm with a ten-pound weight restriction.  (TR 91.)  The VE stated that there would be unskilled positions at

8

the sedentary exertional level such as a parts checker, for which there were 3,500 jobs available in the State of Michigan, and a sorter, for which there were approximately 5,000 available positions in the state.  (TR 91.)

      **C.**    **Medical Record**

Neither Plaintiff nor Defendant have set forth a factual background related to Plaintiff's medical record in their briefs; the ALJ, however, has set forth a comprehensive summary of Plaintiff's medical record in his decision (TR 17-19).  The undersigned, having conducted an independent review of Plaintiff's medical record, hereby incorporates by reference the medical record as set forth in the ALJ's opinion and will incorporate additional comments and citations as necessary throughout this Report and Recommendation.

**IV.**    **ADMINISTRATIVE LAW JUDGE'S DETERMINATION**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of October 1, 2010, and that Plaintiff suffered from the following severe impairments: "Chronic Obstructive Pulmonary Disease (COPD), chronic left Shoulder and Arm Pain, Major Depressive Disorder, Personality Disorder, and history of Pedophilia."  (TR 14.)  The ALJ also found, however, that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 14-16.)  The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> [C]laimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except he could lift and/or carry up to 25 pounds frequently and 50 pounds occasionally.  He could not lift over 10 pounds with his left upper extremity.  The claimant would require a sit-stand option every hour throughout the workday.  He could frequently balance, occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs but never climb ladders, ropes, or scaffolds.  The claimant could not have concentrated exposure to fumes, odors, dust, gases, poor ventilation, temperature extremes, and humidity extreme[s].  He could not perform more than frequent over-shoulder reaching or lifting with the left upper extremity.  The

9

> claimant is limited to simple routine repetitive tasks that involve no fast-paced or production-rate quotas. He could have only occasional contact with the general public, co-workers, and supervisors. The claimant could not have contact with children.

(TR 16-20.) Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 20-21.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time since October 1, 2010, the date Plaintiff's application was filed. (TR 21-22.)

## V.   LAW AND ANALYSIS

### A.   Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter

10

differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.    Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"

11

*Id.* (citations omitted).

### C.   Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and remanded under sentence four because (1) the non-exertional limitation in Plaintiff's RFC of simple, routine, and repetitive tasks fails to describe Plaintiff's mental impairments; and (2) the ALJ's decision fails to articulate a rationale for a RFC of medium work.  (Docket no. 12 at 9-14.)  Plaintiff also seeks a sentence-six remand for consideration of "new and material" evidence regarding Plaintiff's right shoulder, cervical spine, and knees.  (Docket no. 12 at 15-16; Docket no. 17.)

### 1.   The ALJ's Determination of Plaintiff's RFC

The RFC assessment is the Commissioner's ultimate finding about the claimant's ability to perform work-related activities.  Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *5.  It is defined as the most, not the least, the claimant can do despite his impairments.  20 C.F.R.

12

§§ 404.1545(a), 416.945(a).  The ALJ derives the RFC after considering the medical and other relevant evidence in the record.  *Id.*  He must support the RFC by including a narrative discussion describing how the evidence supports his conclusions and providing citations to specific medical facts and nonmedical evidence.  SSR 96-8p, 1996 WL 374184, at *7.  In determining the RFC, the ALJ must discuss the claimant's ability to perform sustained work activities in an ordinary setting on a regular and continuing basis.  *Id.*  The ALJ may adopt an opinion of a medical or nonmedical source in whole or in part if he finds that it is supported by and not inconsistent with the other substantial evidence of record.  However, at all times the ultimate responsibility for fashioning the RFC rests with the ALJ, who has an obligation to determine the RFC based on the evidence he finds credible.

### a.    Plaintiff's Mental Impairments

First, Plaintiff argues that the non-exertional RFC limitation of "simple, routine, repetitive tasks" does not adequately account for Plaintiff's mental impairments of major depressive disorder, personality disorder, and history of pedophilia.[1]  (Docket no. 12 at 9-13.)  In the non-exertional portion of Plaintiff's RFC, the ALJ limited Plaintiff to "simple routine repetitive tasks that involve no fast-paced or production-rate quotas;" "only occasional contact with the general public, co-workers, and supervisors;" and no contact with children.  (TR 16.)  Plaintiff dissects this portion of the RFC in his brief and asserts that each limitation specifically correlates with one of Plaintiff's impairments.  (Docket no. 12 at 10.)  Plaintiff states that the limitation of occasional contact with supervisors, co-workers, and the general public accounts for his moderate restriction in social

---

[1] Plaintiff, however, concedes in his brief that the RFC limitation of no contact with children appropriately accounts for his history of pedophilia.  (Docket no. 12 at 10.)  The undersigned will not further address this issue.

functioning; the limitation to tasks that involve no production-rate or fast-paced quotas accounts for his moderate restriction in concentration, persistence, or pace; and the limitation to no contact with children accounts for his history of pedophilia. (*Id.*) According to Plaintiff, the remaining RFC limitation of "simple, routine, repetitive tasks" does not account for his severe impairments of major depressive disorder and personality disorder. (*Id.*) Defendant counters that the ALJ did, in fact, account for Plaintiff's mental impairments in Plaintiff's RFC because moderate restrictions in social functioning and concentration, persistence, or pace are not independent mental impairments, but are limitations caused by Plaintiff's mental impairments. (Docket no. 19 at 10.) The undersigned agrees with Defendant.

Plaintiff also argues that "simple, routine, repetitive tasks" merely describes unskilled work, not mental limitations, and, therefore, the ALJ should have included limitations specific to mental abilities in Plaintiff's RFC such as (1) understanding, remembering and carrying out instructions; (2) responding appropriately to supervision and co-workers; and (3) responding to work pressures in a work setting. (*Id.* at 10-12 (citing 20 C.F.R. § 404.1445(c))[2].) In support of this position, Plaintiff draws the Court's attention to one of Defendant's prior rulings:

> The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day. . . . Thus, the mentally impaired may have difficulty meeting the requirements of even so-called "low-stress" jobs.

(*Id.* at 12 (quoting SSR 85-15, 1985 WL 56857, at *6) (omission in original).)

Unskilled work is defined as "work which needs little or no judgment to do simple duties that

---

[2]This section does not exist. The undersigned assumes that this was a typographical error and that Plaintiff intended to cite to 20 CFR 404.1545(c), which is the regulation applicable to the RFC's mental abilities component.

can be learned on the job in a short period of time.  20 C.F.R. § 404.1568(a).  According to the Social Security Administration, "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."  SSR 85-15, 1985 WL 56857, at *4.  The substantial loss of ability to meet these demands would severely limit the number of available jobs.  *Id*.

Plaintiff argues that the additional limitations discussed above should have been included in Plaintiff's RFC to account for his mental impairments but does not point to any medical opinions or other evidence in the record to demonstrate that those limitations are actually warranted. Additionally, Plaintiff seemingly implies that the limitations are necessary because the inability to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; to deal with changes in a routine work setting; or to deal with stress are inherent characteristics of Plaintiff's mental impairments.  Plaintiff's does not cite to any authority to support his position; thus, Plaintiff's argument fails.

Plaintiff does, however, direct the Court's attention to the opinion of consultative psychologist, Mark Zaroff, Ph.D., who stated that Plaintiff would benefit from employment and appeared to be capable of many types of jobs, primarily those that involved slightly more independence and less interaction with authority figures. (Docket no. 12 at 11 (citing TR 307).) The ALJ considered Dr. Zaroff's opinion and assigned it considerable weight.  (TR 18-19.)  The ALJ assigned great weight to the opinion of State Disability Determination Services psychologist Judy Strait that Plaintiff might not work well with the general public but would work best alone or in a small, familiar group and that Plaintiff could perform routine, two-step tasks on a sustained basis. (TR 18; TR 100.)  The ALJ accounted for Dr. Zaroff's opinion in his RFC finding by limiting

15

Plaintiff to only occasional contact with the general public, co-workers, and supervisors.  (TR 16.)
Furthermore, the ALJ's RFC findings are consistent with Dr. Strait's opinion.

      The ALJ also considered the treatment records and opinions of Michigan Psychiatric and
Behavioral Associates psychiatrist Dr. Kishore Kondapaneni, M.D. and therapist Whitney Ryder,
Plaintiff's treating psychiatrist, Dr. Usha Movva, M.D., psychiatrist Dr. Krishna Kumar, M.D.,
therapist James Glade, M.S., and psychiatrist Dr. Kanwar Rana, M.D. in his decision.  (TR 18-19.)
Notably, Plaintiff does not challenge the weight that the ALJ assigned to any of the medical sources
listed above.  The undersigned finds that the non-exertional portion of Plaintiff's RFC does account
for Plaintiff's mental impairments and is supported by substantial evidence.  Plaintiff's motion with
regard to this issue should be denied.

### b.      Medium Work

      Next, Plaintiff argues that the ALJ failed to provide a rationale for his determination that
Plaintiff has the residual functional capacity to perform medium work.  (Docket no. 12 at 13-14.)
Plaintiff further argues that the ALJ's RFC finding of medium work, which "involves lifting no more
than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds," is
internally inconsistent with the additional RFC limitation that Plaintiff could not lift over ten pounds
with his upper left extremity.  (*Id.* at 14; 20 C.F.R. § 404.1567(c).)  Plaintiff further contends that
an explanation in this regard is critical because had the ALJ found that Plaintiff was limited to
performing no more than light work, grid rule 202.04 would have been triggered and would have
directed a determination of disabled.  (Docket no. 12 at 14.)  Defendant counters that the ALJ's
summary of Plaintiff's medical record is adequate explanation for the ALJ's conclusion that Plaintiff
could perform medium work and lift ten pounds with his left upper extremity.  (Docket no. 19 at 20-
21.)  Defendant adds that the ALJ's conclusion "permissibly flows from the lack of impairment of

[Plaintiff's] right dominant upper extremity." (*Id.*)  Plaintiff's argument is compelling.

Social Security Ruling 96-8p explicitly provides that the ALJ must include a narrative discussion describing how the evidence supports each conclusion.  Courts in this district and circuit have held that the ALJ's failure to link the evidence to the ultimate RFC requires a reversal and sentence four remand:  "An ALJ ... must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning."  *Meyer v. Comm'r of Soc. Sec.*, No. 10-cv-12963, 2011 WL 3440152, at *9 (E.D. Mich. Jun. 9, 2011) (quoting *Lowery v. Comm'r of Soc. Sec.*, 55 F. Appx. 333, 339 (6th Cir. 2003)).  The *Meyer* court further found that it "may not uphold an ALJ's decision, even if there is enough evidence in the record to support it, if the decision fails to provide an accurate and logical bridge between the evidence and the result."  *Id.* (citations and internal quotation marks omitted).

In *Steadman v. Comm'r of Soc. Sec.*, No. 1:10-cv-801, 2011 WL 6415512, at *12 (S.D. Ohio Nov. 14, 2011), the court noted that the ALJ failed to include a narrative explanation describing how the medical evidence of record supported the claimant's specific exertional limitations set forth in the RFC finding.  The *Steadman* court wrote:

> Although the ALJ did discuss plaintiff's statements of limitations as well as the medical evidence related to plaintiff's back impairment and treatment therefor . . . the ALJ failed to take the next step and explain how such evidence signified an ability to perform light work.  Simply listing the medical and other evidence contained in the record and setting forth an RFC conclusion without linking such evidence to the functional limitations ultimately imposed in the RFC is insufficient to meet the "narrative discussion" requirement of SSR 96-8.

*Id.*

Here, the ALJ recited portions of Plaintiff's testimony and medical record and generally concluded that the evidence did not support Plaintiff's allegations of totally incapacitating symptoms.  (TR 17-19.)  The ALJ noted that the record "shows no restrictions recommended by a

17

treating doctor" and that "diagnostic findings were unremarkable." (TR 19-20.) The ALJ then stated:

> Looking at the record as a whole regarding the claimant's physical limitations, the undersigned limited the claimant to medium work but no lifting over 10 pounds and no over shoulder reaching or lifting with his upper left extremity, specifically noting the claimant's treating nurse practitioner's opinion that he was not disabled.

(TR 20.) The ALJ's "explanation" is vague and does not constitute a narrative discussion that explains how the evidence relates back to his RFC findings. Moreover, the nurse practitioner's conclusory, "checkmark" opinion that Plaintiff is not disabled for purposes of housing assistance does not provide any support for the ALJ's RFC findings. (*See* TR 309-310.) Furthermore, it is unclear how the additional RFC limitation that Plaintiff cannot lift over ten pounds with his upper left extremity correlates with a finding of medium work, which involves lifting and/or carrying up to 25 pounds frequently and 50 pounds occasionally. The undersigned finds that the ALJ's recitation of the evidence and brief, vague explanation fail to adequately describe how the ALJ reached the RFC determination of medium work. That failure requires remand. On remand, the undersigned recommends that the ALJ address and provide further support for his RFC finding that Plaintiff is capable of performing medium work and is limited to lifting or carrying no more than ten pounds with his left upper extremity.

### 2.   *New Evidence of Physical Ailments*

Finally, Plaintiff seeks a sentence-six remand for consideration of evidence that he submitted to the Appeals Council, which had not been submitted prior to the ALJ hearing. (Docket no. 12 at 15-16.) This evidence consists of x-rays of Plaintiff's right shoulder and cervical spine, which were taken approximately two weeks after the date of the ALJ's unfavorable decision. (*See* TR 249-52.) Plaintiff also urges the Court to remand his claim based on an entry in the Disability Determination

18

Explanation Report related to Plaintiff's subsequent disability claim, under which he was ultimately found to be disabled. (Docket no. 17 at 3.) The entry Plaintiff refers to notes that Plaintiff had an MRI of his right knee on April 22, 2013, which revealed a small, medial, meniscus tear and moderate to advanced Degenerative Joint Disease. (*Id.*; Docket no. 17-2 at 5.)

In cases where, as here, the Appeals Council declines to review the ALJ's decision, judicial review is limited to the evidence that was part of the record before the ALJ. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). "The court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence." *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (citing *Richardson*, 402 U.S. at 401).

The court may still remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and material and "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). This is referred to as a "sentence six remand" under 42 U.S.C. § 405(g). *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002). The party seeking remand has the burden of showing that it is warranted. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). "[E]vidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster*, 279 F.3d at 357 (citing *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.* (citing *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984)). In order for the claimant to satisfy his burden of proof as to

19

materiality, he must demonstrate that there was "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (citing *Sizemore*, 865 F.2d at 711)).

With regard to Plaintiff's x-rays of his cervical spine and right shoulder dated March 7, 2012, Plaintiff has failed to show good cause for failing to acquire and present this evidence for inclusion in the hearing before the ALJ. "The mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the 'good cause' requirement." *Courter v. Comm'r of Soc. Sec.*, 479 Fed.Appx. 713, 725 (6th Cir. 2012). The Sixth Circuit has taken a stricter stance on good cause with respect to timing and thus requires that the claimant provide a valid reason for failing to acquire evidence prior to the hearing. *Id.* (citing *Oliver v. Sec'y of Health and Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)). Notably, Plaintiff has not set forth any discussion of good cause either in his brief or his supplemental brief. Moreover, the fact that Plaintiff didn't respond to Defendant's good cause argument in his Response is particularly telling. The undersigned finds that a sentence-six remand for consideration of Plaintiff's March 7, 2012 x-rays is unwarranted and recommends that Plaintiff's motion be denied with regard to this issue.

Plaintiff argues that the Disability Determination Explanation Report entry regarding the April 22, 2013 MRI of his right knee, which revealed a meniscus tear and Degenerative Joint Disease, is new and material evidence because those conditions affect his ability to perform medium work, which, in turn, demonstrates that there is a reasonable probability that the Secretary would have reached a different disposition if presented with this evidence. (Docket no. 17 at 3-4.) Defendant argues that the Report entry is irrelevant evidence of a deteriorated condition, particularly because the MRI was performed over a year after the ALJ's decision in this case. (Docket no. 19 at 29.) The undersigned agrees with Defendant. Evidence is only material if it relates to the

20

plaintiff's condition before the ALJ's decision; evidence that the plaintiff's condition deteriorated or was aggravated is not relevant. *See Oliver*, 804 F.2d at 966; *Sizemore*, 865 F.2d at 712. While Plaintiff did complain of knee pain at the hearing (TR 53-54), the results of the MRI performed over a year after the ALJ's decision are too far removed to reasonably consider them as evidence of Plaintiff's condition during the time period covered by the ALJ's decision. *See Ferguson v. Comm'r of Soc. Sec.,* 628 F.3d 269, 277–78 (6th Cir. 2010) (Medical evidence dated "over a year after the ALJ's denial of benefits . . . was properly deemed 'immaterial' because it does not necessarily speak to [the claimant's] condition at the relevant time."). Thus, the undersigned recommends that Plaintiff's motion for a sentence-six remand for consideration of the entry regarding the MRI of Plaintiff's right knee in Plaintiff's Disability Determination Explanation Report be denied.

## VI.    CONCLUSION

For the reasons stated herein, the undersigned recommends that Plaintiff's Motion for Summary Judgment (docket no. 12) be GRANTED IN PART and DENIED IN PART, that Defendant's Motion for Summary Judgment (docket no. 19) be DENIED, and that this matter be remanded for further consideration and explanation of Plaintiff's residual functional capacity to perform medium work and lift no more than ten pounds with his upper left extremity.

### <u>REVIEW OF REPORT AND RECOMMENDATION</u>

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638

F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 19, 2014         s/ Mona K. Majzoub
                                     MONA K. MAJZOUB
                                     UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: August 19, 2014         s/ Lisa C. Bartlett
                                     Case Manager